WILLIAM A. BROWN, APPELLANT, v. THE COMMUTER OPERATING AGENCY OF THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW JERSEY; ALAN SAGNER, COMMISSIONER OF THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF NEW JERSEY: IN THE MATTER OF THE COORDINATION OF SERVICE OF TRANSPORT OF NEW JERSEY AND LINCOLN TRANSIT COMPANY, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 28, 1977—Decided March 23, 1977.

Before Judges FRITZ, ARD and PRESSLER.

*Mr. Frank J. Badach* argued the cause for appellant (*Messrs. Bathgate & Wegener,* attorneys; *Mr. Peter H. Wegener,* of counsel and on the brief).

*Mr. Richard S. Goldman,* Deputy Attorney General, argued the cause for respondents (*Mr. William F. Hyland,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

PER CURIAM. The Commuter Operating Agency (hereinafter COA) of the New Jersey Department of Transportation approved a plan submitted by the Transport of New Jersey (hereinafter TNJ) and Lincoln Transit Company (hereinafter LTC) to create a coordinated schedule of bus operations between Cape May, Atlantic City, Lakewood and New York. The proposal to coordinate service along the New York to Cape May route submitted by TNJ and LTC was intended to improve service and reduce cost. Included in the proposal approved by COA was the merging of terminal facilities in both Atlantic City and Lakewood, New Jersey, TNJ to use LTC's existing Lakewood facility.

Appellant, a private citizen, who had leased terminal facilities to TNJ at Lakewood and whose lease was not to be renewed under the approved plan, appeals and requests a remand of the matter to COA for a full public hearing, alleging as a matter of due process that he was entitled to notice of the public hearing before COA and an opportunity to be heard at that hearing before its approval of the plan. We disagree.

It is not in dispute that appellant entered into a contract with TNJ in March 1950 in which TNJ leased appellant's bus terminal in Lakewood, New Jersey. This contract was extended to the present time. Representatives of TNJ visited appellant in November 1975 and advised him that they would not renew the lease to this facility when it expired in 1976.

Upon invitation by COA, a plan to consolidate terminal facilities and coordinate service was submitted to COA by

the two carriers. The invitation was solicited by a desire on the part of COA to reduce operating costs. Incident to the supervision of the public transportation subsidy program created by *N. J. S. A.* 27:1A–15 *et seq.,* COA, through its Division of Commuter Services, determined that TNJ and LTC, both subsidized carriers, were duplicating services which ultimately resulted in increased expense to the State. The overlapping service included dual terminal operations immediately next to one another in Lakewood, New Jersey. The proposal submitted for approval provided for coordination of schedules and service, thereby eliminating unnecessary competition and increasing passenger loads per trip. The proposed plan included a representation by TNJ of its intent not to renew its terminal lease with appellant in favor of a joint sharing of terminal facilities owned by LTC. The agreement with LTC provided that TNJ would share the facility at a monthly rental of $1,200. The 1975 rental cost of appellant's terminal was $57,000.

The Division of Commuter Services studied the proposal and determined it would have no effect upon the quality of service to the public and would result in substantial reduction of subsidy payments by COA.

Appellant wrote to Alan Sagner, Commissioner of the Department of Transportation, requesting that a hearing be held prior to the approval of the proposed plan. On December 22, 1975 Peter Stangl, Assistant Commissioner for Public Transportation, responded to appellant's letter in which he said the Department was seeking to effect economies in the operation of bus service. He also stated that the Department would follow the law, and the law required a public hearing in most cases concerning a change in bus operations.

In a letter dated February 13, 1976 Frank E. Tilley, Chief, Bureau of Bus Operations, again advised appellant of the reasons for the proposed consolidation and said appellant's comments on the proposed closing of his facility would be considered.

At the April 13, 1976 meeting COA approved the proposal and authorized its chairman to enter into agreements to amend the current agreements with TNJ and LTC to allow these carriers to implement a coordinated schedule of bus operations and to effect a consolidation of terminal facilities in Lakewood.

The meeting was conducted in accordance with the Open Public Meetings Act, *N. J. S. A.* 10:4–6 *et seq.* During the meeting Stangl explained that at COA's request TNJ and LTC submitted a plan to coordinate their service. The plan had the beneficial effects of both efficiency and substantial monetary savings. The minutes of this meeting were submitted to Governor Byrne for approval. Although the meeting was in accordance with *N. J. S. A.* 10:4–6 *et seq.* and notice of all regularly scheduled meetings of the COA was published in 13 newspapers of general distribution, and was mailed on January 22, 1976 to each individual, agency and organization that requested such notice, there was no public hearing.

The sole issue before this court is whether appellant was entitled to a public hearing prior to a determination by COA to authorize consolidation of terminal facilities at Lakewood, New Jersey.

COA was established by the Transportation Act of 1966, *N. J. S. A.* 27:1A–1 *et seq.* The purpose and intent of the Transportation Act is "to establish the means whereby the full resources of the State can be used and applied in a coordinated and integrated matter to solve or assist in the solution of the problems of all modes of transportation; to promote an efficient, fully integrated and balanced transportation system * * *." *N. J. S. A.* 27:1A–1.

COA is empowered to enter into contracts with motor carriers to operate passenger service which COA "shall determine (a) to be necessary to provide or encourage adequate commuter or intercity bus service and (b) would not otherwise be provided or made available without State assistance." *N. J. S. A.* 27:1A–19.

Appellant's naked assertion of a right to a hearing is without legal support. The only statute which is at all pertinent to appellant's demand is *N. J. S. A.* 27:1A–24. This statute requires a public hearing on notice when a carrier proposes to make a "decrease in the number of * * * buses, substantial change in schedules or increase in fares * * *." *Id.* Here, appellant does not allege nor are there any facts in the record which would support a finding that there was a decrease in the number of buses in service, or a substantial change in schedules, thereby requiring a public hearing pursuant to *N. J. S. A.* 27:1A–24. On the other hand, respondents assert by the affidavit of Neil I. Sternstein, Chief of the Bureau of Bus Operations in the Division of Commuter Services, Department of Transportation, that "the consolidation of terminal facilities would have absolutely no effect on fares, the number of buses in service, or service schedules * * *." This was after an investigation by COA of the effects of the proposed plan submitted by TNJ and LTC. The affidavit of Frank E. Tilley, the former Chief of the Bureau of Bus Operations, makes the same statement concerning the effect of the plan on the number of buses and changes in schedules.

Furthermore, we have found no common law right, nor has appellant directed our attention to any such right, which would entitle him to the public hearing he demands in this matter.

■■ Appellant also contends that his constitutional right to procedural due process was violated when COA approved the merger of the two bus companies which necessarily included the nonrenewal of his lease without affording him an opportunity to be heard. Today, the principle that due process requires notice and an opportunity to be heard before a person is deprived of an interest encompassed by the Fourteenth Amendment needs no support. However, due process does not require a hearing where a person has only an expectation of an interest. See *Board of Regents v. Roth,* 408 *U. S.* 564, 569, 92 *S. Ct.* 2701, 33 *L. Ed.* 2d

548, 556 (1972). Appellant's terminal lease agreement with TNJ expired with no right of renewal. His only real interest in the matter revolves around his expectation that the lease would be renewed. Such an expectation is not protected by the due process clause of the Fourteenth Amendment.

In conclusion, there is no basis for this court to grant appellant his requested relief. Moreover, we are satisfied that the public interest has been protected through COA's scrupulous adherence to *N. J. S. A.* 10:4–6 *et seq.*

Accordingly, the action of the COA authorizing consolidation of terminal facilities in coordination of service is affirmed.